**STATE of Iowa, Appellee,**

v.

**Allen H. MARTIN, Appellant.**

No. 67967.

Supreme Court of Iowa.

Dec. 21, 1983.

Charles L. Harrington, Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Mary Jane Blink, Asst. Atty. Gen., and Richard N. Tompkins, Jr., County Atty., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McCORMICK, and McGIVERIN, JJ.

REYNOLDSON, Chief Justice.

We granted the State's application to review a court of appeals decision that reversed defendant's conviction for false use of a financial instrument (FUFI), a violation of Iowa Code section 715.6. We affirm the court of appeals decision and remand to district court for judgment of acquittal on this charge.

The trial information charged defendant with presenting a $3200 check to a Mason City bank and causing this sum to be deposited in his savings account. The information further alleged this instrument was drawn on Trane Employee's Credit Union, payable to Arthur Hicke and Bob Blomquist, and that the Blomquist endorsement was a forgery. Defendant was alleged to have acted "knowing said endorsement to be a forgery or knowing that he had no right to use or possess said check."

Defendant waived jury trial. There was adequate evidence to support trial court's findings that defendant presented the Trane Employee's Credit Union check to

his Mason City bank. It was drawn on a Wisconsin bank and payable to the order of Arthur Hicke and Bob Blomquist jointly. It bore purported endorsements, in blank, by both. This check represented a loan to Hicke to buy a truck from Blomquist. Through inadvertence, a bank employee neglected to have defendant endorse the check.

The next day defendant withdrew $2650 from his savings account in two transactions, and within a few days he had withdrawn an additional $450. The bank then learned a "stop payment" order had been issued on the Trane check at the request of Blomquist, "because he was the one that was out the money." The "stop payment" document stated the check had been "lost in town."

The evidence established to the court's satisfaction that the endorsement signature "Robert L. Blomquist" had been forged. The minutes of testimony attached to the trial information disclosed the State intended to call Blomquist to testify the signature was not his, no person had the right to use his name on the check, and defendant had no right to its possession. The evidence introduced, however, simply disclosed Blomquist had died before trial. For reasons not disclosed, Hicke was never called as a witness.

The bank cashier sent a letter to defendant. It accused him of fraud and theft and demanded that he come to the bank to discuss restitution. Defendant did not respond. There was no proof, however, that he received the letter. A subsequent letter written by a police detective also elicited no response. Again, there was no proof defendant received this communication.

Defendant did not testify, nor did he introduce any evidence.

Trial court found "proof [was] lacking" that defendant knew the endorsement of Blomquist was forged. It did find, however, that defendant's failure to endorse the check and his "subsequent immediate withdrawals" established that "he knew that he was not the person who had the right to so use it and that he was using it

in the course of a financial or commercial transaction and that he fully knew that he had no right to use or possess it."

Defendant preserved his claim the State had not proved the statutory guilty knowledge element by a motion for acquittal and a subsequent motion for new trial and in arrest of judgment.

The court of appeals agreed with defendant's contention the State failed to prove he knew he had no right to use the instrument in question.

The State pursues here its argument, consistently advanced, that defendant was not an authorized user of the check because he was not in a position to pass along the Iowa Code section 554.3417(1)(a) implied warranty of title ("Any person who obtains payment ... warrants to a person who in good faith pays ... that he has a good title to the instrument ....").

I. The parameters of our review have been identified recently in *State v. Hall*, 287 N.W.2d 564, 565 (Iowa 1980), where this court applied the familiar substantial evidence standard in evaluating defendant's appeal from his conviction after trial to the court:

It is ... well settled that on defendant's appeal from criminal conviction based on jury verdict challenging sufficiency of evidence to sustain the verdict, this court views the evidence in the light most favorable to the State and accepts as established all reasonable inferences tending to support the jury's action. It is necessary to consider only the supporting evidence whether contradicted or not. It is for the fact finder, not us, to resolve questions of fact and determine the credibility of witnesses. Thus, a finding of guilt by the trier of fact is binding on this court unless we find it is without substantial support in the record or is clearly against the weight thereof.

Thus we first examine the statutes implicated in this offense, and then determine whether there was substantial evidence to support trial court's judgment of conviction.

II. Iowa Code chapter 715 relates to the crime of FUFI. The design and goals of the act were described in *State v. Schoelerman*, 315 N.W.2d 67, 73 (Iowa 1982). Section 715.1 defines "financial instrument." *See State v. Tussing*, 340 N.W.2d 257, 258–59 (Iowa 1983). Section 715.2 defines "use of financial instrument." Pertinent here is 715.2(2), providing that one "uses" a financial instrument when he or she "[t]enders or offers such instrument to another in the course of a financial or commercial transaction, with the representation, either express or by implication, that the instrument is what it purports to be and that he or she is a person who is shown on its face to be one who may rightfully so use such instrument."

Section 715.6 ("False use of a financial instrument.") provides in pertinent part:

The use of a financial instrument with the intent to obtain fraudulently anything of value by one who knows that the instrument is not what it purports to be, or who knows that he or she is not the person nor the authorized agent of the person who, as shown on the instrument, has the right to so use the instrument, shall constitute the false use of a financial instrument.[1]

In *State v. Combs*, 316 N.W.2d 880 (Iowa 1982), we affirmed the theft conviction of a defendant who previously had been acquitted on a FUFI charge based on the same facts. In the course of analyzing defendant's double jeopardy claim we marshaled the elements of the FUFI offense:

(1) use of a financial instrument,

(2) intent to fraudulently obtain something of value,

(3) knowledge that (a) instrument is not what it purports to be or (b) he or she is not the person or authorized agent of the person who, as shown on the instrument, has the right to so use the instrument.

*Id.* at 883.

III. For the purposes of this case we may pass the first two elements and direct our attention to the third. The State was required to produce such evidence as could convince a rational trier of fact that the defendant *knew* the instrument was not what it purported to be, that is, that it carried a forgery, or that he *knew* he was not "the person or authorized agent of the person who, as shown on the instrument, [had] the right to so use the instrument." *Id.*

■ Trial court found the evidence insufficient to prove defendant knew a critical endorsement on the check was forged. On the second alternate of required proof, there was no showing defendant knew he was not the person or authorized agent of the person who as shown on the instrument had the right to present it for payment. The check, with the forged endorsement, gave every appearance of bearer paper, negotiable by anyone. There was no need for defendant to endorse it before tender, although this is the usual practice. J. White & R. Summers, *Handbook of the Law under the Uniform Commercial Code* 504 (2d ed. 1980). Defendant may have acquired the check for value from the person who found it. The inferences that may be drawn from his failure to voluntarily endorse the check in the absence of a request to do so, or from his withdrawals, do not rise to the level of the substantial evidence required to support a conviction.

Iowa Code section 715.2(2), involved here, includes the type of activity formerly designated as "uttering." *See* 4 J. Yeager & R. Carlson, *Criminal Law & Procedure* § 360 (1979). An opinion of this court in which the defendant was charged with uttering a forged check contains the following relevant language:

In *Miller v. State*, 51 Ind. 405, the defendant was charged with forging the name of one Mullen upon the back of the draft, and also with having uttered the instrument with such forged indorse-

---

1. During the 1983 session, the legislature made changes in this section not relevant here. *See* 1983 *Iowa Legis.Serv.* 864 (West). This defend-ant was charged under the version quoted above.

ment, and an instruction saying that upon the utterance of the draft with the forged indorsement thereon the presumption arose that the defendant forged the same, unless his possession was explained, was held erroneous on the ground that being indorsed by the payee in blank the draft would pass upon delivery so as to vest title in each successive holder without further indorsement. Scienter is a necessary element of this crime, and the mere fact that the defendant had in his possession a check, purporting to be indorsed by a payee other than himself, and the title to which would pass upon delivery, was not alone sufficient to justify his conviction.

*State v. Waterbury,* 133 Iowa 135, 140, 110 N.W. 328, 330 (1907).

Nor are we convinced the State's resort to the commercial code resolves the evidentiary deficiency. *See State v. Sanders,* 309 N.W.2d 144, 146 (Iowa Ct.App. 1981). The Iowa Code section 554.-3417(1)(a) implied warranties may support a civil action, but they cannot be employed to supply missing proof, shift the burden of proof in a criminal case, or delete an element of a crime defined in the criminal code. *See State v. Sangster,* 299 N.W.2d 661, 663 (Iowa 1980) ("The elements of an offense are determined by the statute defining it ...."); *Lever Brothers Co. v. Erbe,* 249 Iowa 454, 468, 87 N.W.2d 469, 478 (1958) ("It is axiomatic that statutes creating and defining crimes cannot be extended by intendment.").

We affirm the court of appeals decision and remand to district court for judgment of acquittal.

DECISION OF COURT OF APPEALS AFFIRMED; REMANDED TO DISTRICT COURT WITH DIRECTION.