**STATE of Iowa, Appellee,**

v.

**Frank Lee PROPPS, Appellant.**

No. 84–836.

Supreme Court of Iowa.

Nov. 13, 1985.

Charles L. Harrington, Appellate Defender, and Raymond E. Rogers, Asst. Appellant Defender, for appellant.

Thomas J. Miller, Atty. Gen., Steven K. Hansen, Asst. Atty. Gen., and Dan L. Johnston, County Atty., for appellee.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, CARTER and WOLLE, JJ.

HARRIS, Justice.

There are four assignments of error in this appeal from a conviction and subsequent sentence for false use of a financial instrument [FUFI]. *See* Iowa Code § 715.6 (1985). Defendant and Darlene Avant went to a Des Moines store to purchase automobile parts. As payment defendant tendered a money order made out for $193.50. The order was not endorsed, the payee was blank, and the figures appeared scratched and blurred. The cashier was naturally suspicious and refused to cash the order. Defendant and Avant left the store before the money order was returned. Police later apprehended them. According to the State's evidence the order had been purchased for $1.50 and altered by defendant and Avant.

Both defendant and Avant were jointly charged and tried. A directed verdict was entered in favor of Avant at the close of evidence. Defendant was convicted. We transferred defendant's appeal to the court of appeals which affirmed his conviction. On further review we also affirm.

I. There is no merit in defendant's first assignment, a challenge to a trial court ruling which admitted a photocopy of the seller's business copy of the $1.50 money order. Defendant objected that the photocopy was hearsay and not the best evidence. The court of appeals affirmed on this assignment and so do we.

A. Iowa rule of evidence 803(6) provides the business records exception to the hearsay rule. Admissibility under rule 803(6) is based on the guarantees of reliability and trustworthiness usually associated with business records. C. McCormick, *Evidence* § 306, at 720 (2d ed. 1972); *see also State v. Fingert*, 298 N.W.2d 249, 252

(Iowa 1980) (business records exception prior to adopting Iowa rules of evidence).

■ To lay a foundation for the exhibit the State called a clerk from the shop where the defendant had purchased the $1.50 money order. The witness testified she regularly sold money orders as a part of her job and explained how they were issued and how the records were kept. She identified her initials on the money order sold to defendant and on the photocopy later admitted into evidence.

She could not specifically identify the exhibit from memory and could not testify the exhibit was made at or about the time it was issued. She sold many orders every day and could not remember much about any one sale. Defendant thinks these difficulties take the photocopy beyond the rule 803(6) exception. We disagree.

■ Rule 803(6) does not require the custodian of a record to have personal knowledge of each document. It is the impossibility of such recall that demonstrates the need for the exception. C. McCormick, *supra*.

■ B. The best evidence objection was also properly rejected. Iowa rule of evidence 1003 provides:

*Admissibility of duplicates.* A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) under the circumstances, admission of the duplicate would be unfair.

Under rule 1001(4), a duplicate includes a photocopy.

Here no one questioned whether the money order that was sold to defendant was in fact a money order. There is no evidence indicating it was unfair to admit the duplicate.

II. Defendant's second assignment contends an unendorsed money order is not a financial instrument within the meaning of Iowa Code section 715.1 (1985). There are two issues in the contention. Is a money order a financial instrument? If so, does it still qualify if it is unendorsed? Money orders are not specifically mentioned in the definition of a financial instrument. Section 715.1 provides, in pertinent part:

A financial instrument is any of the following: (1) A check, bill note, draft, bond receipt, or any writing which ostensibly evidences an obligation of, or surrender of right or claim by, the person who has purportedly executed it or authorized its execution. "Writing" includes printing or any other method of recording information, money, coins, tokens, stamps, seals, credit cards, badges, trademarks, and other symbols of value, right, privilege, or identification.

We have not previously considered whether money orders are included in the statute but we think they are.

■ A financial instrument includes a draft. *See* § 715.1. A money order is a *"draft* issued by banks, post offices, telegraph companies and express companies and used by the purchaser as a substitute for a check." *Black's Law Dictionary* 907 (rev. 5th ed. 1979) (emphasis added); *see also State v. LaRue,* 5 Wash.App. 299, 303, 487 P.2d 255, 258 (1971) (money order constitutes a draft); 36 Am.Jur.2d *Forgery* § 27 (1968) ("The crime of forgery has been extended by statute, and to a considerable extent by judicial construction, until it covers nearly every class of instruments known to the law as affecting private or public rights."). Applying a reasonable construction to section 715.1, we believe a draft includes a money order. *See State v. Newman,* 313 N.W.2d 484, 486 (Iowa 1981).

■ A more serious question is posed by the lack of endorsement. Some words in the statute seem to presuppose the instrument is to be endorsed:

[A]ny writing which ostensibly evidences an obligation of, or surrender or right of claim by, the person who has purportedly *executed* it or authorized its *execution.*

Section 715.1(1) (emphasis added).

Furthermore, section 715.2 provides, in pertinent part:

One uses a financial instrument when one does any of the following:

(1) Makes or *executes* such instrument or an endorsement thereon, or alters such instrument so as to materially change its nature or the right or obligation which it purports to represent.

(Emphasis added).

Other jurisdictions, interpreting similar statutes, have concluded that an instrument must be endorsed to provide a basis for prosecution. *See, e.g., State v. Haas*, 433 So.2d 1343, 1345 (Fla.Dist.Ct.App.1983) (blank cashier's checks did not violate forgery statute); *Smith v. State*, 7 Md.App. 457, 463, 256 A.2d 357, 361 (1969) (blank check which contained no payee's name, no payor's signature, no date, and no specified amount "without legal efficacy" and thus not a forgery); Annot., 65 A.L.R.3d 1307 (1975); 36 Am.Jur.2d *Forgery* § 24 (1968).

Three reasons, taken together, lead us to conclude that the lack of endorsement is not fatal to a charge under the Iowa statute. The first, relied upon by the court of appeals in reaching the same conclusion, is that the endorsement, or lack of it, does not affect the nature of the transaction between the order's seller and purchaser. To be sure, negotiability might be destroyed for want of endorsement. But the question is not one of negotiability; rather the question is whether the order is a financial instrument. The court of appeals reasoned:

Due to the very nature of a money order, signed or unsigned, it evidences a surrender of right or claim. The purchaser of a money order pays a sum of money and in return receives the order as evidence of payment. The surrender of claim or right to a specified amount of money is made *at the time the money order is issued.* If a purchaser neglects to sign the money order this would certainly affect the negotiability of the instrument; however it does not change the fact that the purchaser tendered money at some point in order for it to be issued. Thus, unlike a check, for instance, a money order by its very existence represents the surrender of a right required by section 715.1.

*Cf. State v. Tussing*, 340 N.W.2d 257, 259 (Iowa 1983) (delivery of a savings withdrawal slip to a bank constituted a request for a sum from the account and a surrender of the depositor's right to that amount in the account).

A second reason, also relied upon by the court of appeals, is supplied from a list of things expressly included in section 715.-1(3):

Any letter, *credit card, charge plate,* or other device . . .

(Emphasis added). Obviously, credit cards and charge plates call for no endorsement. Their inclusion may not conclusively demonstrate that other financial instruments might not be expected to be endorsed. But their inclusion mitigates against defendant's contention that the use of the word "endorsement" in the section indicates a requirement for perpetrating the offense.

Finally, we think the trial court view is supported by considering the legislative purpose of the statute. *See Shidler v. All American Life and Financial Corporation*, 298 N.W.2d 318, 321 (Iowa 1980) (court looks to object to be accomplished, evils to be remedied and gives a liberal construction to the law which will best effect its purpose).

We have said "[t]he goal [of the FUFI statute] was to combine in one offense all crimes which have a similar type of adverse impact on the integrity of the financial system, and to provide a single penalty for all such equally culpable acts." *State v. Schoelerman*, 315 N.W.2d 67, 73 (Iowa 1982). It has been noted that the purpose of the FUFI statute was to "expand the scope of the crime forgery, by including within it various types of fraud committed by the use of the instruments and devices which are used in place of money or property in commercial transactions. . . ." 4 J. Yeager & R. Carlson, *Iowa Practice: Criminal Law and Procedure* § 352, at 92 (1979).

Including unsigned money orders within the definition of section 715.1 furthers the policy of punishing those persons who attempt to undermine the "integrity of the financial system" by passing false though

unsigned money orders. By relying on technicalities which would serve to exclude an unsigned money order, we would be failing to carry out the legislative intent of the FUFI statute. The assignment is without merit.

■ III. In another assignment defendant contends he was denied effective assistance of counsel because his trial lawyer failed to object to an instruction. To convict defendant of FUFI the prosecution was required to prove three elements:

(1) Use of a financial instrument,

(2) Intent to fraudulently obtain something of value,

(3) Knowledge that (a) instrument is not what it purports to be or (b) he or she is not the person or authorized agent of the person who, as shown on the instrument, has the right to so use the instrument.

*State v. Combs,* 316 N.W.2d 880, 883 (Iowa 1982); Iowa Code § 715.6 (1985); *see also State v. Martin,* 341 N.W.2d 728, 730 (Iowa 1983). The knowledge element is satisfied when "the person has information which would put a reasonable person on inquiry as to such facts, but acts without making a reasonable inquiry." Iowa Code § 715.3 (1985).

■ The marshalling instruction failed to include the knowledge element set forth in *Combs* and Iowa Code section 715.6. False use of a financial instrument is a specific intent crime. *Martin,* 341 N.W.2d at 730. The State does not contend the instruction, as it related to knowledge, was proper.

■ Defendant's trial counsel however, failed to object to the omission. Because his trial counsel failed to object, defendant may not now assert error on appeal. *State v. Beeman,* 315 N.W.2d 770, 775–76 (Iowa 1982).

Defendant relies on *State v. Goff,* in which we held the trial counsel's failure to object to the omission of the specific element of intent from a marshalling instruction denied defendant the effective assistance of counsel in a kidnapping case. 342 N.W.2d 830, 837 (Iowa 1983).

The State relies on *State v. Blackford,* in which we held there was no denial of effective assistance when trial counsel failed to object to the omission of the criminal intent element from the marshalling instruction. We said:

The facial appeal of such an argument is diminished in most situations where practical considerations make it unlikely that the inclusion of a particular element in the marshalling instruction would have produced any difference in the verdict of the jury.

335 N.W.2d 173, 178 (Iowa 1983). In analyzing the *Goff* and *Blackford* holdings, it is significant to note that we filed our opinion in *State v. Miles,* 344 N.W.2d 231 (Iowa 1984) just two months after the *Goff* opinion was filed. In *Miles* we substantially altered the standard we employ in assessing claims of incompetent counsel by adopting an actual prejudice standard. *Id.* at 235. This standard was later adopted in *Strickland v. Washington,* 466 U.S. 688, ——, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674, 693 (1984). To show prejudice, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at ——, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

Our later cases have conformed to the same wording adopted in *Strickland. Taylor v. State,* 352 N.W.2d 683, 685 (Iowa 1984). It is not necessary for us to consider whether the changed standard for reviewing ineffective assistance claims would have changed the result in *Goff.* It is enough here to observe that the present defendant's situation falls clearly within our holding in *Blackford.*

It is to be noted that the instructions elsewhere supplied the missing element. Instruction six defined the offense and identified a user as one "who knows that the instrument is not what it purports to be...." We found such a separate instruction significant in *Blackford.* 335 N.W.2d at 178.

The State is on firm ground in arguing the defendant has shown no prejudice.

Clearly, he has not demonstrated that but for the error the result would have been different. The jury would have been hard pressed not to find fraudulent intent from defendant's attempt to tender the unsigned, altered money order for automotive parts. The jury was separately instructed that it could not infer intent from mere possession of the order. The only way the jury could have found intent, as it did, was to find defendant knew the order had been altered. Defendant received a fair trial.

The assignment is without merit.

IV. Defendant also challenges the sufficiency of evidence that he knew the money order was not what it purported to be. Under the standard outlined in *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980), we disagree.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.