# IN THE COURT OF APPEALS OF IOWA

No. 14-0069
Filed January 28, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CLARENCE CASTILE JR.**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Story County, Steven P. Van Marel, District Associate Judge.

A defendant appeals following his conviction for domestic abuse assault asserting his counsel was ineffective in various ways. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney General, Stephen P. Holmes, County Attorney, and Crystal Rink, Assistant County Attorney, for appellee.

Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MULLINS, P.J.**

Clarence Castile appeals following his conviction for domestic abuse assault, in violation of Iowa Code sections 708.2A(1) and 708.2A(2)(b) (2013). In his appeal, Castile claims his attorney provided ineffective assistance in a number of ways, including: (1) failing to object to the general intent jury instruction and not requesting the specific intent instruction, (2) failing to object to the testimony of the police officer who Castile claims vouched for the credibility of the victim and one witness, and (3) failing to object to evidence of other bad acts. Castile also claims the cumulative effect of all these errors has resulted in denying him a fair trial.

**I. Background Facts and Proceedings.**

After a night of drinking, Clarence Castile arrived at Danielle Hart's apartment, where he had been occasionally staying, to retrieve his children. Not wanting Castile to drive with the children in the car in his intoxicated state, Hart demanded he leave the children with her and get out of her apartment. When Castile's daughter was unable to locate her belongings in response to Castile's demands to leave, Castile struck the girl with an open hand. Attempting to defend the girl, Hart tackled Castile to the ground. When Castile continued to argue with Hart and insist on taking his children with him, Hart called police seeking assistance to prevent Castile from taking his children from her home while he was intoxicated. While Hart was on the phone with the 911 dispatcher, Castile punched Hart in the left eye causing the phone to fly out of her hand. Hart's friend, Cassaundra Mingus, picked up the phone and relayed information

to the dispatcher as Hart and Castile continued to fight. Hart reported she was struck in the head multiple times during the altercation. Castile eventually picked up one of his children and left the apartment. Police arrived shortly thereafter and prevented Castile from driving away with the child in the car.

After speaking with Hart, Mingus, and Castile,[1] the officers arrested Castile and charged him with domestic abuse assault.[2] The case proceeded to a jury trial on December 10, 2013, and the jury returned a guilty verdict the next day. Castile was sentenced to one year in jail with all but thirty days suspended. He was placed on probation for a year and assessed the applicable surcharges and fines. The court also entered a five-year no-contact order between Hart and Castile.

Castile now appeals claiming his counsel was ineffective in several aspects.

## II. Scope and Standard of Review.

Our review of an ineffective-assistance-of-counsel claim is de novo as the claim implicates the defendant's Sixth Amendment right to counsel. *State v. Lyman*, 776 N.W.2d 865, 877 (Iowa 2010). To succeed on his claim counsel provided ineffective-assistance, Castile must prove (1) counsel failed to perform an essential duty and (2) he suffered prejudice as a result. *See id.* Counsel's

---

[1] Castile was accompanied by other friends, but those friends did not report to police that they had seen the altercation.

[2] The parties share a child, and Castile would frequently stay with Hart at her apartment. *See* Iowa Code § 236.2 (defining domestic abuse as an assault "between family or household members who reside together at the time of the assault" and as an assault "between persons who are parents of the same minor child, regardless of whether they have been married or have lived together at any time").

performance is measured objectively against the prevailing professional norms considering all the circumstances. *Id.* at 878. To prove prejudice, Castile has to show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See id.* We normally preserve ineffective-assistance claims for postconviction-relief proceedings where the record can be fully developed and counsel is given an opportunity to respond to the allegations. *State v. Shanahan*, 712 N.W.2d 121, 136 (Iowa 2006). However where the record is complete, we may decide the claim on direct appeal. *Id.*

## III. Ineffective Assistance of Counsel.

Castile alleges his counsel failed to provide effective assistance in a number of ways including: (1) failing to object to the court instructing the jury on general intent and not requesting a specific intent jury instruction, (2) failing to object to the testimony of the police officer who Castile claims improperly vouched for the credibility of Hart and Mingus, and (3) failing to object to evidence introduced by the State showing his prior bad acts.

**A. Criminal Intent Jury Instructions.** Our supreme court had made it clear that assault is a specific intent crime. *See State v. Fountain*, 786 N.W.2d 260, 265 (Iowa 2010) ("Because the elements of these assault alternatives include an act that is done to achieve the additional consequence of causing the victim pain, injury, or offensive physical contact, the crime includes a specific intent component."). Therefore, courts should instruct the jury on specific intent. *Id.* No such specific intent instruction was given or requested in this case, but

that does not end our inquiry. We must decide whether Castile proved he suffered prejudice as a result of the lack of a specific intent instruction.

The thrust of Castile's defense at trial was not to deny a physical altercation occurred,[3] rather the defense was that Hart, rather than Castile, was the aggressor. Castile asserted the affirmative defense of justification—Castile claimed any injury Hart sustained was the result of Castile defending himself against Hart's assault. In his opening statement to the jury, which occurred after the State rested its case, defense counsel stated:

> The evidence has shown and will continue to show that Ms. Hart invited this incident. The text message that's been admitted into evidence, which Ms. Hart admits to have interchanged with Mr. Castile, tells him you come home again, "we're going to box." . . .
> We have evidence—you've heard evidence of Ms. Hart indicating that she admitted to initiating the physical contact that's been between herself and Mr. Castile. . . .
> The evidence that's been presented and that will be presented now in the defendant's case is that this action was initiated by Ms. Hart, that it continued on. She was the initial aggressor. She invited it, and that it took someone to come in and extricate Mr. Castile from the situation to get this brought down to the level where it should be.

Again in the defense's closing statement, counsel asserted:

> Don't come back here or we're going to box. That's where this whole thing started. Initiated by Danielle Hart. A half hour prior to Officer Kruger and Officer Clewell coming on the scene, Mr. Castile receives this text message from Danielle Hart. Don't come back here or we're going to box. Not an unequivocal statement.
> . . . .
> The State has indicated that punching is not reasonable force, a type of force that was utilized by Danielle Hart admittedly on the stand today. She admitted, yes, I punched Clarence Castile; so at the same time that we're alleging on behalf of the State that's

---

[3] We note that on the police video taken at the scene, which was shown to the jury, Castile denied ever physically touching Hart. However, this defense was not used at trial.

not reasonable force, apparently Ms. Hart gets to utilize that level of force. She initiated this incident with the text. She invited the incident with the follow-up call.

Mr. Honore testified that he walked in and he witnessed Ms. Hart punch Clarence Castile. . . .

. . . .

She admitted—Ms. Hart admitted to taking him down. She admitted to wrestling him down on the ground. We go back to commensurate force. You've got a justification instruction. Reasonable force is commensurate force. Okay? So she's admitted on the stand that she punched. She's admitted on the stand that she wrestled him down to the ground. Anyone has opportunity to respond to that with commensurate force. Commensurate force. In addition, the State through its own witnesses has established that Mr. Castile spent overnights with Ms. Hart in the residence there, and that was effectively his residence for purposes of the legal standard of not having a duty to retreat from your own house. He doesn't have a duty to retreat. When we talk about the level of the separate options or obligations that someone has when faced with this type of situation, he doesn't have a duty to retreat from that place because he's lived there. He lives there on the weekends, as she's admitted, so he can respond with commensurate force when it's thrust upon him. She admitted she initiated the physical altercation. We've seen the text which invites a physical altercation.

. . . But the testimony across the board is that this was initiated by Ms. Hart. It was invited by Ms. Hart. It rose to the level of something that was a physical confrontation because of Ms. Hart taking him down to the ground.

Defense counsel also made his justification strategy clear in his motion for judgment of acquittal. Counsel stated:

Mr. Castile had raised the defense of self-defense of—justification in the physical interaction which, as the evidence has shown, was invited by Ms. Hart, was initiated by Ms. Hart. The State's evidence asserts that they lived together. As such, the defendant had no duty to retreat when the force was thrust upon him. There's been no credible evidence presented Ms. Hart was defending another. In reality, she punched him and vice versa. The evidence taken as a whole fails to establish the elements of the offense as alleged in the Trial Information. Thank you, Your Honor.

Clearly Castile was not contesting whether he had the requisite specific intent to cause Hart pain, injury, or make offense contact with Hart but was asserting his actions were justified to defend himself from Hart's attack. There was clear documentation of the injuries Hart sustained in the altercation. Castile did not challenge the specific intent element of assault (i.e., "I did not intend to harm the victim" or "I did not know what I was doing") but claimed he was justified in striking Hart (i.e., "I harmed Hart in order to fend off Hart's attack"). Thus, even if the jury were given the specific intent instruction, we conclude Castile has not proven the result of the proceeding would have been different. *See State v. Broughton*, 450 N.W.2d 874, 876 (Iowa 1990) ("'[T]he facial appeal of such an argument [failure to object to an erroneous jury instruction] is diminished in most situations where practical considerations make it unlikely that the inclusion of a particular element in the marshaling instruction would have produced any difference in the verdict of the jury.'" (alteration in original) (quoting *State v. Propps*, 376 N.W.2d 619, 623 (Iowa 1985))).

**B. Vouching for Witness Credibility.** Next, Castile asserts counsel was ineffective in failing to object when the police officer vouched for the credibility of Hart and Mingus. Castile claims counsel should have objected to the following exchange between Officer Kruger and the prosecutor:

> Q. When Officer Clewell returned from speaking with Ms. Hart, was a decision made on how to proceed? A. Yes.
> Q. What was that decision? A. The decision—based on the evidence, stories we were able to collect, Mr. Castile had punched Danielle in the face, so we charged him with serious assault.
> Q. Why was the decision made to arrest Mr. Castile? A. Based off the evidence and the testimonies that Danielle and

> Mingus stated had happened. They were consistent with what the injury Danielle had sustained.

Castile claims this testimony was improper because it opined and vouched for the truthfulness of Hart's and Mingus's version of the events of that night. Castile asserts implicit in this testimony is that Officer Kruger spoke with all parties involved that night and concluded that Hart's version of the events was more credible. Castile concedes that Officer Kruger was able to testify that Castile was arrested but claims it was improper for the officer to go into his underlying credibility determinations and opinions. Castile likens Officer Kruger's testimony to the testimony of an expert witness citing the *Myers* line of cases, which prohibit expert witnesses from offering opinions on the credibility or truthfulness of a witness. *See State v. Myers*, 382 N.W.2d 91, 95 (Iowa 1986) ("[E]xpert opinions on the truthfulness of a witness should generally be excluded because weighing the truthfulness of a witness is a matter reserved exclusively to the fact finder.").

In this case, Officer Kruger was not testifying as an expert. He was not asked whether another witness was telling the truth. He was asked, as a fact witness, to relay what occurred the night of the incident. Officer Kruger's description of what occurred that night included the arrest of Castile. Officer Kruger was asked why the decision to arrest Castile was made. His offered explanation of the reason for the arrest was that the injuries observed on Hart were consistent with Hart's and Mingus's version of the events. The officer was not asked whether he believed Hart and Mingus were truthful or whether he believed Castile was lying. *See State v. Graves*, 668 N.W.2d 860, 873 (Iowa

2003) (finding it improper for the prosecutor to ask a defendant if another witness was lying). The prosecutor's questions to Officer Kruger did not solicit vouching responses, and the officer's answers did not cross the line to vouching. Thus, counsel did not have an obligation to object to the testimony of Officer Kruger.

**C. Other Bad Acts.** Castile also claims counsel was ineffective when he failed to object to evidence admitted by the State that pointed out other bad acts he committed. Specifically, the prosecutor asked Officer Kruger whether Castile's child was securely restrained in the car when the officer arrived. Officer Kruger responded, "No." Castile also claims it was improper to admit a portion of the police squad car video where one of Castile's companions tells the officers that he and Castile are known to dispatchers because they beat up fake gang members. Also on the squad car video, Officer Kruger is seen drawing his taser on Castile when it initially appeared to the officer that Castile would resist arrest. Finally, Castile made a comment to Officer Kruger on the way to the police station for the officer to "google" Castile's name so he would know what happened the last time a cop arrested him. Castile, on appeal, claims counsel should have sought to redact these portions of the video or objected to the video's admission. He claims this evidence was not relevant to any fact in consequence and the probative value was substantially outweighed by the danger of unfair prejudice.

The State contends these snippets from the squad car video and the statement regarding the unrestrained child were isolated incidents that have no reasonable probability of affecting the outcome of the trial. Therefore, the State

asserts Castile cannot prove there is a reasonable probability of a different outcome had counsel objected and had those objections been sustained.

Iowa Rule of Evidence 5.402 provides all evidence that is relevant is admissible, unless otherwise prohibited, and all evidence that is irrelevant is not admissible. In addition rule 5.403 provides that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. There is little question Officer Kruger's testimony about Castile's child being unrestrained in the vehicle was not relevant to the facts at issue—whether Castile was guilty of domestic abuse assault. Similarly, the statements on the video from Castile's friend and Castile regarding their history with dispatch and other law enforcement officers are not relevant to the facts in issue. Neither is the fact that Officer Kruger drew his taser on Castile when the officer thought Castile would resist arrest. But concluding this evidence was irrelevant, and thus inadmissible, does not end our inquiry here. We must determine whether Castile suffered prejudice as a result of his counsel's failure to object to this evidence. *See Lyman*, 776 N.W.2d at 878 ("To establish prejudice, a defendant must prove 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'").

The portion of the video shown to the jury lasted over thirty minutes. Each of the statements Castile now complains of lasts a few seconds each and most were generally muffled. An objection would have just drawn attention to these statements. The same can be said about the isolated statement made by Officer Kruger regarding Castile's child being unrestrained in the vehicle. It was a

single, isolated reference, and any objection would have just drawn attention to the comment. In light of the substantial evidence of domestic abuse assault, we conclude there is no reasonable probability of a different outcome had objections been made to this evidence.

**D. Cumulative Effect.** Finally, Castile claims the cumulative effect of all of his counsel's errors undermines confidence in the outcome of the case and establishes a reasonable probability the outcome would have been different if counsel had objected. *See State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012) (asserting the court should look at the cumulative effect of counsel's errors when multiple claims of ineffective-assistance are alleged to see whether the defendant satisfied the prejudice prong of the *Strickland* test). Even aggregating all of Castile's claims of ineffective assistance together does not undermine our confidence in the outcome of this case. We therefore deny Castile's claims of ineffective assistance of counsel and affirm his conviction and sentence.

**AFFIRMED.**