# IN THE COURT OF APPEALS OF IOWA

No. 24-1425
Filed November 13, 2025

**ESTATE OF JOHN K. FREIBURGER,**
       Plaintiff-Appellee,

**vs.**

**PHIL MAUSSER,**
       Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Ackley, Judge.

A defendant appeals a bench trial ruling finding him liable for unjust enrichment. **AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

Alyssa M. Carlson of O'Connor & Thomas, P.C., Dubuque, for appellant.

Jordan H. Fox of Kintzinger, Harmon Konrardy, P.L.C., Dubuque, for appellee.

Considered without oral argument by Greer, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

Janice Freiburger brought this suit against Phil Mausser on behalf of her husband's estate. She seeks to collect a debt for ten loads of hay that her husband allegedly delivered to Mausser nine months before his death. The only record of the transaction was a series of truck scale tickets that Janice found in her home after her husband passed away. At trial, Mausser admitted to receiving five loads of hay, but he denied owing any payment. The district court found Mausser liable for unjust enrichment as to all ten loads.

On appeal, Mausser challenges the admission of the scale tickets and the sufficiency of the evidence supporting the court's award. We reject the evidentiary challenge but grant partial relief on the merits based upon our de novo review of the record. While we agree with the district court's award as to the undisputed hay deliveries, the evidence linking the other loads to Mausser is too conjectural to hold him liable. We accordingly vacate the judgment against Mausser for those loads and remand for entry of a corrected judgment.

## I.       Background Facts and Proceedings

John Freiburger was a Dubuque County hay farmer. Phil Mausser was one of John's customers. In June 2022, John died unexpectedly, leaving his wife, Janice Freiburger, to wind down the hay operation. John typically asked his buyers to pay for their hay at the time of delivery, but he sometimes sold on credit. As executor of her husband's estate, it was Janice's job to settle the open accounts.

In the months after John's death, Janice unearthed two sets of truck scale tickets stowed in different areas of her home. The first set of tickets, which Janice found in a kitchen desk drawer, listed five loads of hay weighed in September and

October 2021. Each of them referenced "Freiburger" and "Mausser" in a line designated "company." The second set of tickets, which Janice found in a bedroom drawer, listed another five loads weighed in August and September. Only John's name was listed on the company line for those tickets.

Janice recalled her husband mentioning he "sold some hay to Phil" in the fall of 2021. She concluded that all ten scale tickets showed unpaid deliveries to Mausser. So, Janice drew up a pair of invoices requesting payment of $7300.80 for the kitchen desk hay and $6889.92 for the bedroom drawer hay. She reached these totals by multiplying the net weight of each load by $120 per ton.[1] Although John's prices had varied based on the quality of his hay crop and market conditions, Janice considered $120 a fair rate for Mausser because that is what another customer had paid for John's hay.

When Janice first approached Mausser about the scale tickets, he initially denied receiving any hay. But at trial, Mausser acknowledged receiving seven loads of moldy hay in fall 2021, two of which he paid for at the time of delivery and five of which he accepted free-of-charge to help John clear out his hay shed. Mausser testified that he "never asked [John] for one load" because he "didn't need the hay." Nevertheless, after Janice sent the invoices, Mausser mailed her two checks totaling $4364.10—just to "get it over with." The checks were inscribed with the words "payment in full" and referenced five loads of hay in their memo lines. Janice declined to accept them.

---

[1] Because the scale tickets showed the gross weight of the loads, Janice asked her son, Matt Freiburger, to weigh the truck and trailer they recalled John using for his deliveries. Janice subtracted those weights from the scale ticket figures to determine the net weight of the hay.

In November 2023, Janice filed an expedited civil action on behalf of John's estate seeking to collect on the unpaid invoices. She asserted claims for breach of contract and unjust enrichment. Following a one-day bench trial, the district court rejected the breach-of-contract claim, finding insufficient evidence of an agreed-upon purchase price. But the court found in favor of Janice on her claim for unjust enrichment. The court concluded that Mausser had received the hay shown on all the scale tickets, that it was of sufficient quality to convey a benefit, and that allowing Mausser to keep the hay without payment would be unjust. Citing the trial testimony of other farmers that "$120.00 per ton is a reasonable price," the court entered judgment against Mausser for $14,190.72.

Mausser appeals, challenging the district court's admission of the scale tickets at trial and the sufficiency of the evidence supporting Janice's claim for unjust enrichment.

## II.  Standard of Review

Hearsay rulings are reviewed for correction of legal error. *Borst Bros. Constr., Inc. v. Fin. of Am. Com., LLC*, 975 N.W.2d 690, 697 (Iowa 2022). "If a court's factual findings with respect to application of the hearsay rule are not 'clearly erroneous' or without substantial evidence to support them, they are binding on appeal." *State v. Long*, 628 N.W.2d 440, 445 (Iowa 2001) (citation omitted).

As for Mausser's merits challenge, both parties assert that our review is de novo because unjust enrichment is an equitable claim. But "review of a decision by the district court following a bench trial depends upon the manner in which the case was tried to the court," not necessarily the nature of the claim. *Carroll Airport*

*Comm'n v. Danner*, 927 N.W.2d 635, 642 (Iowa 2019) (citation omitted). Throughout most of the trial, the parties lodged—and the court ruled on—objections to the admission of evidence. *See Dix v. Casey's Gen. Stores, Inc.*, 961 N.W.2d 671, 680 (Iowa 2021) (noting rulings on evidentiary objections are the "hallmark of a law trial" (citation omitted)). This resulted in frequent interference with the testimony. However, before the close of evidence, the district court invited both parties to supplement the record on the unjust enrichment claim.

Because the court provided the parties with an opportunity to present evidence excluded by its rulings, and because neither party claims they were prevented from introducing relevant evidence, it is appropriate to review the unjust enrichment claim de novo. *See Passehl Est. v. Passehl*, 712 N.W.2d 408, 414 n.6 (Iowa 2006). Even on de novo review, "we give weight to the factual findings of the district court, especially with respect to determinations of witness credibility." *Danner*, 927 N.W.2d at 642–43 (citation omitted); *see also Hora v. Hora*, 5 N.W.3d 635, 645 (Iowa 2024) (reviewing what a de novo review entails).

### III.    Analysis

#### A.    Hearsay Evidence

At trial, Mausser objected to the scale tickets on hearsay grounds, among others. The court overruled Mausser's objection under the business records exception in Iowa Rule of Evidence 5.803(6). Mausser challenges that ruling on appeal. He argues the scale tickets are "textbook hearsay" and that Janice failed to lay the necessary foundation for the business records exception to apply.

Out-of-court statements are generally inadmissible when offered to prove the truth of the matter asserted. Iowa Rs. Evid. 5.801(c), 5.802. But there are

"numerous exceptions to the hearsay rule." *State v. Veverka*, 938 N.W.2d 197, 199 (Iowa 2020). One is the familiar business-records exception, which permits admission of hearsay records describing an "act, event, condition, opinion, or diagnosis" where the following elements are met:

> (A) The record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) The record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) Making the record was a regular practice of that activity;
> (D) All these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with rule 5.902(11) or rule 5.902(12) or with a statute permitting certification; and
> (E) The opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Iowa R. Evid. 5.803(6). The burden is on the proponent of the record to show these requirements are satisfied. *S.K. ex rel. Tarbox v. Obstetric & Gynecologic Assocs. of Iowa City & Coralville, P.C.*, 13 N.W.3d 546, 555 (Iowa 2024).

The parties agree that the scale tickets were hearsay evidence. They were offered to prove the amount of hay Mausser received from John. The only dispute is whether Janice—who introduced the tickets through her own testimony—satisfied the prerequisites for admission under rule 5.803(6).[2] Mausser points out that no witness with "personal knowledge of the record-keeping system and the

---

[2] We note that, in expedited civil actions, our rules allow the court to admit hearsay records "notwithstanding the absence" of foundational testimony if, among other things, the proponent gives notice of intent to introduce the document at least ninety days before trial and the document "appears to fall within [the business records exception]." Iowa R. Civ. P. 1.281(4)(g)(2). Although this case was tried as an expedited civil action, neither party addresses the more relaxed standard for admission of documentary evidence. We accordingly apply the criteria set out in Iowa Rule of Evidence 5.803(6).

creation of these records" appeared at trial. He argues Janice's testimony fails to establish that the ten scale tickets were made when the loads were weighed, recorded by someone with knowledge, or made and kept in the ordinary course of business.

The Iowa Supreme Court has made it clear that "the specific person who created the record in the course of business need not testify to lay the foundation for the business records exception." *State v. Reynolds*, 746 N.W.2d 837, 843 (Iowa 2008). While a "qualified witness" must explain the record-making process, they need only show the record was generated "in the course of . . . business, at or reasonably near the time, using standard procedures that reasonably indicate the trustworthiness of the information." *Id.* Personal knowledge of the particular record is not required. *See State v. Propps*, 376 N.W.2d 619, 621 (Iowa 1985). This is because the purpose of the rule 5.803(6) elements is not to authenticate or identify hearsay evidence, but to ensure it bears the "reliability and trustworthiness usually associated with business records." *Id.* at 620.

Janice testified that her husband "always sold [hay] by the ton," that he regularly visited a truck stop on Highway 20 to weigh his hay, and that he received a scale ticket for each load. She knew the tickets "would indicate [the] time, the date, how much the load weighed, and who weighed it, and who owned the hay." And she recognized the disputed exhibits as scale tickets when asked about them at trial. Although Janice was not present when the tickets were created, her familiarity with John's hay-weighing procedures makes her a qualified witness to lay foundation for these records. *See* Iowa R. Evid. 5.803(6)(D); *McKenney v. Iowa Physicians Clinic Med. Found.*, No. 24-0651, 2025 WL 1704722, at *5 (Iowa

Ct. App. June 18, 2025) (finding a medical secretary was a "qualified witness," despite her unfamiliarity with the contents of a proffered record, where she was "informed on how the medical records were stored and used" in her clinic); *United States v. Collins*, 799 F.3d 554, 584 (6th Cir. 2015) (noting the meaning of "another qualified witness" under the identically worded Federal Rule of Evidence 803(6) "should be given the broadest interpretation" (citation omitted)).

Mausser counters that the scale company—not John Freiburger—was the "*actual source* of the records," and so Janice's testimony about her husband's business practices failed to meet the elements of rule 5.803(6). He likens this case to *Reynolds*, where the supreme court declined to extend the business records exception to a set of Federal Reserve error reports informing a bank that its customer cashed fraudulent money orders. 746 N.W.2d at 842–43. A bank employee testified that the bank received, maintained, and relied upon the Federal Reserve reports in its normal course of business. *Id.* at 842. But the supreme court found that evidence fell short:

> Here, there is no testimony from anyone with knowledge of how the Federal Reserve error reports were generated. . . . Bank employees were unable to, or at least did not, independently determine that the money orders were counterfeit; the bank relied exclusively on the Federal Reserve to make that determination. There is no evidence in the record either as to how the Federal Reserve determined the money orders were counterfeit, or how the error reports were made.

*Id.* at 843. The court "acknowledge[d] the possibility the Federal Reserve records were created through a fully automated and reliable process involving no human declarant." *Id.* But because there was "no evidence in the record from any person with knowledge as to how the Federal Reserve error reports were created," it found the hearsay exception unsatisfied. *Id.*

Janice did not testify to the mechanics of the truck scale or the process by which the tickets were prepared. But unlike in *Reynolds*, the record here is sufficient to ensure that the scale tickets were created by an automated, reliable process. Iowa law requires most commercial truck scales to be equipped with a "type-registering weigh beam, a dial with a mechanical ticket printer, an automatic weight recorder, or some similar device which shall be used for printing or stamping the weight values on scale tickets." Iowa Code § 215.19. It is clear from the face of the tickets that they were printed by such a device. And while that does not account for the names listed in the company lines, Janice testified that those details would have been supplied by her husband.[3] Each ticket also bears a weighmaster's certificate attesting to the accuracy of the information recorded. *See* Iowa Code § 214.7 ("Weighmasters are required to make true weights . . . and give, upon demand, to any person having weighing done, a certificate showing the weight, date, and for whom weighed.").

We conclude Janice's testimony established that the information on scale tickets was either registered by the scale or supplied by John; that the tickets were generated at the time the loads were weighed; and that they were created and maintained in the ordinary course of business. Iowa R. Evid. 5.803(6)(A)–(C); *see also Pruisner v. Ballhagen*, No. 14-1431, 2015 WL 5965154, at *6 (Iowa Ct. App. Oct. 14, 2015) (finding a hog farmer's weight logs were properly admitted under

---

[3] Although Mausser successfully objected to Janice's testimony about the source of the "company" information, the court is not bound by the rules of evidence when determining preliminary questions of admissibility. Iowa R. Evid. 5.104(a).

the business records exception).  Thus, the district court did not err in admitting the challenged exhibits under the business records exception in rule 5.803(6).

### B.     Unjust Enrichment

Mausser also challenges the district court's award of $14,190.72 in damages for unjust enrichment.  At trial, Janice argued she was entitled to recover the value of the hay deliveries evidenced by the scale tickets from her kitchen desk and bedroom drawers.  She alleged Mausser received, but never paid for, ten loads of marketable "first crop" hay worth at least $120 per ton.[4]  Mausser contends Janice proved neither the quality nor quantity of hay at issue.  He also claims she failed to prove a basis for the $120 rate.

"Unjust enrichment occurs when one party is enriched at the expense of the other under unjust circumstances."  *Bradshaw Renovations, LLC v. Graham*, 20 N.W.3d 479, 487 (Iowa 2025).  To recover on this theory, the plaintiff must show "(1) enrichment of the defendant, (2) at the expense of the plaintiff, (3) under circumstances that make it unjust for the defendant to retain the benefit."  *Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 577 (Iowa 2019).  Among other possible remedies, a prevailing plaintiff may collect damages in an amount equal to the value of the inequitably retained benefit.  *Iowa Waste Sys., Inc. v. Buchanan Cnty.*, 617 N.W.2d 23, 30 (Iowa Ct. App. 2000).

Janice's claim rests on a tenuous set of facts.  She testified that John sold his hay on a handshake basis and kept track of his sales in his head.  She also

---

[4] One of John's hay customers explained that first crop hay was typically lower quality than second or third crop hay.  "Waterway hay"—which is the kind that Mausser said he received—was the lowest quality of hay that John sold.

conceded that she was never part of the conversations between her husband and Mausser. Yet she recalled John telling her that he sold some hay to Mausser in fall 2021. Because the kitchen desk scale tickets referred to Mausser by name, Janice surmised that John kept them to document an outstanding debt. As for the bedroom drawer tickets, Janice assumed that hay also went to Mausser "because he was the only one that got hay delivered to him by my husband." Janice did not testify about why she concluded the hay deliveries remained unpaid when she invoiced Mausser.

John's son, Matt Freiburger, testified that he overheard a conversation between his father and Mausser sometime in the fall of 2021. Matt did not hear all the details, but he "could read between the lines that [Mausser] was looking for an opportunity to feed his cows." He gathered that "Phil needed hay, and my old man had some hay for sale." Matt recalled that John's shed, at that time, was full of "nice dry first crop hay." He loaned his father a pickup and trailer for the delivery. Matt testified that Mausser received "most of" the first-crop hay that his father harvested in 2021.

Mausser conceded that he received some hay from John in fall 2021. But on Mausser's recollection, it was seven loads of moldy, year-old hay, which John brought because "[h]e needed some room in his shed" and "he couldn't get rid of [it] someplace else." He alleged the hay was too wet and "hot" for either farmer to store and that he "didn't need the hay" in the first place. According to Mausser, John accepted $36 per bale for the first two loads but declined payment for the rest. He testified that John never asked for money when they saw each other after the hay deliveries. When questioned about the checks he sent to Janice, Mausser

explained that he offered "exactly what I paid for the first two loads," reasoning the $36 per-bale rate "was more than fair."

On rebuttal, Janice alleged that John "wouldn't waste his time" weighing low-quality hay. She suggested that Mausser was recalling a different transaction with her husband. The district court credited the Freiburgers' version of events, finding Mausser's allegation that John delivered "throw away" hay lacked credibility.

We owe deference to the court's credibility finding. *Danner*, 927 N.W.2d at 642–43. And Mausser's allegations are indeed dubious. He initially alleged that he received no hay from John in fall 2021, but he later contradicted that account by acknowledging he received low-quality hay. And although Mausser asserts that hay was a gift, he offered payment to Janice. Mausser's wife, Phyllis, also testified that Mausser tried to pay John before he died. These shifting positions call Mausser's truthfulness into doubt. What's more, there is no dispute that John weighed at least five loads that Mausser agreed he received. As Janice emphasized, it would make little sense to weigh a valueless product—the more plausible explanation is that John's hay was marketable. Mausser would be unjustly enriched if allowed to keep that hay without payment.

That said, while we reject Mausser's argument about the *quality* of the hay he received, we agree the record is insufficient to hold Mausser liable for the *quantity* of hay Janice claims. Mausser admits that he received the five loads of hay shown on the scale tickets from the kitchen desk. And it is undisputed he never paid for that hay. But Mausser denies receiving the five loads of hay from

the bedroom drawer tickets.[5]  Those tickets, unlike their counterparts, make no reference to Mausser.

To link the bedroom drawer hay to Mausser, the district court credited Janice's assertion that Mausser was the only customer to whom John delivered hay.  However, the record was far from clear on this point.  Other parts of Janice's testimony were equivocal about which, if any, of John's customers received hay by delivery.  More than once, her attorney had to prompt her response.  Another farmer, Joseph Riniker, testified that "John delivered some hay if it was close by" and that these deliveries were not particularly rare.

Even assuming that Mausser was the only farmer who received personal deliveries from John, it does not necessarily follow that the bedroom drawer tickets were from deliveries to Mausser.  Matt Freiburger suggested it was his father's "common practice" to weigh the hay he sold to other customers.  Hay-buyer Neil Spoden explained that when he purchased John's product, he weighed it himself and then returned the scale ticket to John.  Yet another farmer, William Lansing, mentioned a similar procedure.  This testimony cuts against the court's conclusion that the bedroom drawer tickets were attributable to Mausser.  All told, the evidence is too conjectural to find Mausser received those five loads of hay.  We accordingly reverse the district court's entry of judgment for the scale tickets Janice found in her bedroom drawer.

---

[5] While Mausser referenced two other loads of hay, he claimed that he paid for those loads.  Janice agreed, testifying that Mausser purchased and paid for waterway hay "before any of those scale tickets were written out."

This leaves us with the value of the undisputed hay that Mausser received, as documented by the scale tickets from the kitchen desk drawer. Mausser argues that Janice's demand for $120 per ton was "a purely subjective number based on a single conversation with another farmer." We disagree. The market value of an inequitably retained benefit is an appropriate measure of damages for a claim of unjust enrichment. *See* Restatement (Third) of Restitution and Unjust Enrichment § 49 (A.L.I. 2011); *Iowa Waste Sys.*, 617 N.W.2d at 30. Multiple farmers testified at trial that $120 per ton was a reasonable price for first-crop hay in fall 2021. Lansing testified that he has spent as much as $250 to $350 per ton. While Mausser argued that moldy bales would be worth far less than $120 per ton, he offered nothing to rebut Janice's proof of the market value of quality hay. The evidence supports the district court's award as to the kitchen desk hay.[6]

## IV.     Conclusion

In sum, we reject Mausser's evidentiary challenge, vacate the award as to the hay deliveries from the scale tickets that Janice found in the bedroom drawer, and remand this case for entry of judgment for $7300.80, reflecting the market value of the hay documented by the scale tickets from the kitchen desk.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

---

[6] Mausser also contends that Janice's invoices were skewed by faulty math and an inaccurate truck-and-trailer weight. But these challenges also fall short. The mathematical discrepancies highlighted by Mausser amounted to less than a dollar. And although Matt Freiburger testified the truck and trailer weighed roughly 500 pounds lighter than Janice figured into her bills, such an error would mean Janice's invoices *underestimated* the net weight of the delivered hay.