# IN THE SUPREME COURT OF IOWA

No. 18–0765

Filed January 17, 2020

**STATE OF IOWA,**

Appellee,

vs.

**KEN LORENZE KUHSE,**

Appellant.

___

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Linn County, Russell G. Keast, District Associate Judge.

The State seeks further review of the court of appeals' decision reversing the defendant's conviction due to ineffective assistance of counsel. **COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Mark C. Smith (until withdrawal), Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Darrel Mullins, Assistant Attorney General, Jerry Vander Sanden, County Attorney, and Laurie Craig, Assistant County Attorney, for appellee.

**MANSFIELD, Justice.**

In this appeal from a conviction for domestic abuse assault causing bodily injury, we are asked to decide whether the district court adequately instructed the jury on the defendant's justification defense. The defendant asserts his trial counsel was ineffective for failing to object to the marshaling instruction that did not mention the State needed to prove the act was done without justification. There were, however, eight other instructions regarding his justification defense. The court of appeals reversed the defendant's conviction and remanded for a new trial, reasoning that failure to include "lack of justification" in the marshaling instruction was prejudicial for ineffective-assistance purposes, regardless of the strength of the State's case and the fact that the subject had been covered elsewhere in the instructions.

Having granted the State's application for further review, we now express our disagreement with the court of appeals' analysis. In our view, considering the evidence and the instructions as a whole, we do not believe there was a reasonable probability of a different outcome if justification had been covered in the marshaling instruction in addition to the other instructions. Accordingly, we find no ineffective assistance of counsel, we affirm Kuhse's conviction and sentence, and we vacate the decision of the court of appeals.

**I. Background Facts and Proceedings.**

Ken Kuhse and V.P. had been married for nine years. They did not have children together. They lived in the same house, although Kuhse spent most of his time in the basement and V.P. upstairs. On the evening of August 20, 2017, Kuhse was consuming alcoholic beverages with two of his friends in the basement of their home when V.P. came downstairs to do laundry around 10:30 p.m. Kuhse called V.P. names, she reciprocated

to some extent, and the verbal altercation escalated to physical abuse.[1] According to V.P.'s testimony, Kuhse strangled V.P. to the point that she could not breathe and the necklace she was wearing broke. Kuhse taunted V.P. that it was a "good thing . . . that [he had] long arms because there ain't a damn thing [she] can do about this right now." To try to loosen his grip, V.P. "was swiping at him." Kuhse finally let her go but caught her as she fell and slammed her against the wall. Kuhse then grabbed her a second time, slamming her toward the entertainment center, and a third time, slamming her against the coffee table.

V.P. went upstairs, grabbed her purse, phone, and keys, and drove to a friend's apartment. From there she called the police. Upon arriving, the police observed V.P.'s injuries including bruises, abrasions, and scratches on her knees, neck, and arm. The police felt it was necessary to get an ambulance because V.P. was experiencing labored breathing and complaining of hip and leg pain. V.P. refused the ambulance stating she had no medical insurance to cover the cost, although she did eventually allow her friend drive her to the emergency room. At the hospital, x-rays of her hips, neck, and elbow were taken, although no bone breaks or soft tissue abnormalities were detected. V.P. was discharged a few hours later with an antibacterial ointment for her abrasions.

Having interviewed V.P. at her friend's apartment, the police then spoke with Kuhse at the couple's home. He reported that V.P. had been "attempting to start a fight with him all day" and that he acted in self-defense. The police observed a scrape on Kuhse's nose and a bruise on his arm. Kuhse reported that he got the injuries from V.P. "bumping into him" and "throwing herself onto his arm" and that he only pushed V.P.

---

[1]V.P. testified Kuhse called her a "f***ing b****" and a "f***ing c***," and she "probably" called Kuhse an "ass."

against the wall to protect himself. Kuhse is five feet, nine inches tall and weighs 190 pounds. V.P. is five feet, two inches tall and weighs 105 pounds.

On September 29, a trial information was filed in the Linn County District Court charging Kuhse with domestic abuse assault causing bodily injury, in violation of Iowa Code sections 708.2A(1) and 708.2A(2)(*b*) (2017). Kuhse filed a notice of self-defense.

Trial took place on March 19 and 20, 2018. V.P. took the stand and described Kuhse's physical abuse of her on the evening of August 20, 2017. She also testified that on Halloween of 2014, which was their anniversary date, Kuhse had physically assaulted her by pushing her onto the floor. This caused her to hit her head, although no charges were filed over that incident. Kuhse's version of what happened on August 20, 2017, including his claim that he acted in self-defense, came into evidence through the two responding police officers who testified during the prosecution's case-in-chief. Kuhse himself did not testify at trial.

The court's marshaling instruction advised the jury as follows:

AMENDED AND SUBSTITUTED

INSTRUCTION NO. 9

The State must prove all of the following elements of the crime of Domestic Abuse Assault Causing Bodily Injury:

1. On or about the 20th day of August, 2017, the defendant either did an act which was meant to cause pain or injury, result in physical contact which was insulting or offensive, or place [V.P.] in fear of immediate physical contact which would have been painful, injurious, insulting or offensive to [V.P.].

2. The defendant had the apparent ability to do the act.

3. The defendant's act caused a bodily injury to [V.P.] as defined in Instruction No. 11.

4. [V.P.] and Ken Kuhse were married at the time of the incident.

If the State has proved all of these numbered elements, the defendant is guilty of Domestic Abuse Assault Causing Bodily Injury and you should sign Form of Verdict No. 1.

In a separate instruction, the jury was instructed on Kuhse's justification defense:

INSTRUCTION NO. 12

The Defendant claims he acted with justification.

A person may use reasonable force to prevent injury to a person, including the Defendant. The use of this force is known as justification.

The State must prove the Defendant was not acting with justification.

Two further instructions expounded,

INSTRUCTION NO. 13

A person is justified in using reasonable force if he reasonably believes the force is necessary to defend himself from any imminent use of unlawful force.

If the State has proved any one of the following elements, the Defendant was not justified:

1. The Defendant started or continued the incident which resulted in injury.

2. An alternative course of action was available to the Defendant.

3. The Defendant did not believe he was in imminent danger of death or injury and the use of force was not necessary to save him.

4. The Defendant did not have reasonable grounds for the belief.

5. The force used by the Defendant was unreasonable.

and

INSTRUCTION NO. 14

> A person is not justified when they provoke or cause force to be used against them, intending to use it as an excuse to injure another. If you find the State has proved the Defendant provoked the use of force intending to use it as an excuse to injure [V.P.], he was not justified.

Five more instructions elaborated on the elements of Instruction No. 13, explaining the concepts of reasonable force and apparent danger.

Additionally, the jury was told that "[w]henever [the court] instruct[s] you the State must prove something, it must be by evidence beyond a reasonable doubt. If the State does not prove the Defendant guilty beyond a reasonable doubt, your verdict must be not guilty." A separate instruction defined reasonable doubt extensively. Moreover, the court instructed the jury that it "must consider all of the instructions together. No one instruction includes all of the applicable law."

The prosecutor gave a brief closing argument that takes up only four pages of transcript. In that argument, the prosecutor addressed self-defense as follows:

> The defendant has claimed self-defense. But if you look at the scratch on his nose, does that look like an injury that was caused by a smaller woman? Doesn't that injury look like it was caused by a smaller woman trying to get away from a bigger man as he held her by the neck? Doesn't it look like she tried to stop him from harming her?

Kuhse's attorney delivered a closing argument that was nearly as short—consuming seven-and-a-half pages of transcript. She devoted the last page-and-a-half to the subject of justification. She began by stating, "Self-defense. Now, the State has to prove one of the following elements to show the defendant was not justified." She then explained how her client had acted in self-defense. In her telling, V.P. came at him and he merely "pushed her away."

In a one-page rebuttal closing argument, the prosecutor responded by reiterating her previous point about the nature of Kuhse's injury: "The defendant did have a scratch on his nose, but didn't it look like an injury that was caused by a wom[a]n trying to get away from the defendant[,] trying to make him let go of her neck?"

The jury found Kuhse guilty as charged, and the district court accepted the verdict. On April 27, Kuhse was sentenced to five days in jail with credit for time served, a $315 fine, and surcharges. *See* Iowa Code § 708.2A(7)(*a*); *id.* § 903.1(1)(*b*); *id.* § 911.1(1). He was ordered to pay court costs and $60 of attorney fees, and to complete the Iowa Domestic Abuse Program.

Kuhse timely appealed. He urged that his trial attorney had been ineffective for failing to object to the omission of any reference in the marshaling instruction to his justification defense. We transferred the case to the court of appeals.

That court found that "Kuhse produced sufficient evidence to raise a justification defense." It then noted that the State's burden of negating that defense "was not reflected in the assault marshaling instruction." The court went on, "The jurors may well have believed their work was done once they found the State satisfied the elements in the marshaling instruction; nothing prodded them to keep going." The court concluded, "A reasonable probability exists that the outcome of the trial would have been different if the jury had been properly instructed on the State's burden to disprove the justification defense in the marshaling instruction." Accordingly, the court reversed Kuhse's conviction and remanded for a new trial. We accepted the State's application for further review.

## II. Standard of Review.

Although the Iowa Code no longer permits claims of ineffective assistance of counsel to be decided on direct appeal, *see* 2019 Iowa Acts ch. 140, § 31 (to be codified at Iowa Code § 814.7 (2020)), we held in *State v. Macke* that this provision "do[es] not apply to a direct appeal from a judgment and sentence entered before July 1, 2019." 933 N.W.2d 226, 228 (Iowa 2019). Because the judgment and sentence here were entered before July 1, 2019, we are not foreclosed from considering Kuhse's claim of ineffective assistance. "Thus, we will decide whether the appellate record is adequate to determine the claim. If not, the claim will be preserved for postconviction relief." *State v. Brothern*, 832 N.W.2d 187, 192 (Iowa 2013) (citation omitted). If the record is adequate, we review Kuhse's claim of ineffective assistance for failing to object to the marshaling jury instruction de novo. *See State v. Harris*, 891 N.W.2d 182, 185–86 (Iowa 2017).

## III. Was Trial Counsel Ineffective for Failing to Object to the Marshaling Instruction that Did Not Mention the State Needed to Prove the Act Was Done Without Justification?

In Iowa, the term "justification" appears in the statutory definition of the crime of assault. That is, "[a] person commits an assault when, without justification, the person does any of the following . . . ." Iowa Code § 708.1(2). Yet the Iowa State Bar Association's model instruction for assault omits this language. *See* Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 800.1 (2018). In *State v. Delay*, we clarified that "justification is an affirmative defense rather than an element of that crime." 320 N.W.2d 831, 833 (Iowa 1982). We elaborated, "It is unreasonable to think that the legislature intended to place upon the State the burden of laboriously disproving each of those forms of justification in every

prosecution for assault, no matter how unrelated to the facts of the case they may be." *Id.* at 834.

As with any affirmative defense, the district court must instruct the jury on justification if substantial evidence supports the theory. *Id.* at 835. The defendant bears the initial burden of producing sufficient evidence to support the instruction. *Id.* at 834. Once that threshold is met, the burden shifts to the State to prove lack of justification beyond a reasonable doubt.

The constitutions of the United States and Iowa guarantee a criminal defendant the right to effective assistance of counsel. U.S. Const. amend. VI; Iowa Const. art. I, § 10. In order to support a claim of ineffective assistance of counsel, a defendant must show (1) that counsel failed to perform an essential duty and (2) that prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2064–65 (1984); *Ledezma v. State*, 626 N.W.2d 134, 141–42, 145 (Iowa 2001) (en banc).

To prove counsel failed to perform an essential duty, the defendant "must show that counsel's performance was deficient," meaning counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. The court determines "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S. Ct. at 2065; *see Nguyen v. State*, 878 N.W.2d 744, 752 (Iowa 2016).

The crux of the prejudice component rests on whether the defendant has shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at

2068; *see State v. Lorenzo Baltazar*, 935 N.W.2d 862, 872 (Iowa 2019) (finding that even where there was outdated language within the jury instruction, the defendant could not show prejudice due to the overwhelming evidence against him).

> To establish prejudice in the context of an ineffective-assistance-of-counsel claim, a defendant must show a reasonable probability that the result of the trial would have been different. The likelihood of a different result must be substantial, not just conceivable. A defendant must show the probability of a different result is sufficient to undermine confidence in the outcome. This standard requires us to consider the totality of the evidence, identify what factual findings would have been affected, and determine if the error was pervasive or isolated and trivial.

*State v. Ambrose*, 861 N.W.2d 550, 557–59 (Iowa 2015) (citations omitted) (deciding there was no ineffective assistance of counsel when defense counsel failed to object to an instruction that told the jury not to consider lesser included offenses until it had acquitted the defendant of the greater offense).

"Jury instructions are not considered separately; they should be considered as a whole." *State v. Fintel*, 689 N.W.2d 95, 104 (Iowa 2004). In *Fintel*, the defendant argued that his trial counsel was ineffective for failing to object to three instructions as prejudicial misstatements of the law. *Id.* at 103. He contended those instructions improperly directed the jury "to determine his guilt *or innocence*." *Id.* (emphasis added). We concluded that because two other instructions both explained that the State had the burden to prove the defendant guilty beyond a reasonable doubt and defined reasonable doubt, the defendant was not prejudiced and counsel was not ineffective. *Id.* at 103–04.

We recently emphasized how the applicable standards differ depending on whether claimed error in jury instructions is preserved or raised by way of ineffective assistance. *See Lorenzo Baltazar*, 935 N.W.2d

at 871–72. A "presumed-prejudice standard applies to preserved errors in jury instructions." *Id.* at 871. However, "an ineffective-assistance-of-counsel claim based on failure to preserve jury instruction error must demonstrate deficiency and prejudice." *Id.* at 871–72.

We have at times found ineffective assistance of counsel when an element of an offense was omitted from a marshaling instruction. An example is *Harris*, 891 N.W.2d 182. In *Harris*, the defendant exited a bar and then struck an individual outside the bar multiples times with a knife. *Id.* at 184. He was convicted of going armed with intent. *Id.* at 185. The marshaling instruction, however, "did not include the element of going or moving with specific intent to use [the knife] against [the victim]." *Id.* The defendant argued his counsel's failure to object to this omission amounted to ineffective assistance of counsel. *Id.*

In our decision, we acknowledged that "[a] reasonable fact finder could find Harris carried the knife as he moved from inside the bar to the outdoors where he attacked [the victim]." *Id.* at 187. But this of course did not resolve the issue before us. *See id.* at 187–89. We noted that the existence of substantial evidence to support a finding of movement "does not control our determination of whether prejudice flowed from the flawed marshalling instruction." *Id.* at 189. As we explained, "[W]e must apply the familiar prejudice framework prescribed for ineffective-assistance-of-counsel claims." *Id.* at 188. "Upon review of the record," we concluded that "our confidence in the jury verdict is undermined because the evidence of Harris's movement was not great and the flawed jury instruction did not require the jury to make a finding on that element of the crime." *Id.* at 189.

*Harris* illustrates that even when a marshaling instruction omits a required element of a crime, a particularized review of the record is needed

to determine whether counsel was ineffective in failing to object to the omission. *Harris* is consistent with prior law. In *State v. Propps*, we held that counsel was not ineffective in failing to object to the omission of a knowledge element from a marshaling instruction covering the crime of false use of a financial instrument. 376 N.W.2d 619, 623 (Iowa 1985). We noted, "The State does not contend the instruction, as it related to knowledge, was proper." *Id.* Yet we concluded, "The State is on firm ground in arguing the defendant has shown no prejudice." *Id.* Among other things, we pointed out that "the instructions elsewhere supplied the missing element." *Id.*

In *State v. Douglas*, we found that counsel was not ineffective in failing to object to the court's felony-murder instructions. 485 N.W.2d 619, 621–22 (Iowa 1992). There the defendant, who suffered from epilepsy, raised diminished responsibility as a defense to both first-degree murder alternatives—premeditated murder and felony murder. *Id.* We discussed what had happened at trial:

> The trial court submitted an instruction on diminished responsibility on the issue of specific intent to kill [the victim]. As an alternative to this charge of first-degree murder, the court instructed that defendant could be convicted of first-degree murder if, as an element thereof, he was participating in the offense of first-degree robbery or attempted murder. This alternative did not include an instruction on specific intent or diminished responsibility. Douglas claims trial counsel was ineffective in failing to object to these omissions in instructing on alternative B.

*Id.* Yet we found no ineffective assistance for two reasons. First, the defendant's expert testimony "belie[d] the suggestion of a nexus between [the defendant's] acts and his condition of epilepsy." *Id.* at 622. Second, the defendant "received the benefit of this defense [diminished capacity] through other instructions by the court." *Id.*

Likewise, in *State v. Heacock*, the defendant contended that the marshaling instruction for child endangerment with serious injury was missing a specific intent element. 521 N.W.2d 707, 709 (Iowa 1994). We rejected the claim:

> We need not resolve the conflicting contentions, even assuming error in the challenged marshaling instruction. For reasons that follow we think Heacock has failed in his burden of showing a different result was probable if the instruction had been worded in accordance with his present theory. Had it been preserved by objection, Heacock's claimed error may have demanded reversal. But error was not preserved and the fundamental rule is that it was therefore waived.

*Id.* at 709–10.

In sum, under cases like *Harris*, *Propps*, *Douglas*, and *Heacock*, ineffective assistance of counsel does not necessarily occur when defense counsel fails to object that a marshaling instruction does not refer to a required element of a defense—or cross-reference a defense that the State is required to disprove. Instead, one must examine the record and consider the evidence presented, how the case was tried, and what the jury instructions as a whole said.

In this case the jury received twenty-seven jury instructions in total. The first eight and the last eight were standard criminal-case instructions. In between, instructions nine through eleven covered the offense charged and lesser included offenses. Instructions twelve through nineteen covered the justification defense. Instruction twelve on justification concluded with the following stand-alone sentence: "The State must prove the Defendant was not acting with justification." Under these circumstances, we do not share the court of appeals' concern that "[t]he jurors may well have believed their work was done once they found the State satisfied the elements in the marshaling instruction."

Both sides made justification a focal point of their closing arguments. This helped confirm for the jury that justification was an essential part of its deliberations and that the State had to prove "the Defendant was not acting with justification." In any event, there was strong evidence that Kuhse did not act with justification. Photographs of V.P.'s and Kuhse's injuries were admitted at trial. According to the photographs, V.P.'s injuries were much more significant than Kuhse's. Also, the photographic images matched her testimony. There were multiple fresh abrasions to her neck, elbow, arm, and knee. Meanwhile, the Kuhse photographs showed only a scratch on his nose.

There is more. Kuhse's claim, as relayed through police officer testimony, that V.P. was "bumping into him" and "throwing herself onto his arm" seems implausible. It does not explain her significant neck injuries. By contrast, V.P.'s testimony that she was "swiping at" Kuhse to stop him from strangling her easily accounts for the scratch on his nose. Furthermore, the jury could readily observe the gap in size between V.P. and Kuhse. V.P. was five feet, two inches and 105 pounds; Kuhse was five feet, nine inches and 190 pounds. Also undermining Kuhse's claim of self-defense is that V.P. was by herself in the basement while Kuhse had his drinking buddies down there with him.[2]

Viewing the instructions and the trial record as a whole, we do not see a reasonable probability of a different outcome if the marshaling instruction on domestic abuse assault causing bodily injury had included or cross-referenced lack of justification. Because we find that Kuhse cannot establish *Strickland* prejudice, we do not reach the question whether his counsel breached an essential duty.

---

[2]Neither of these individuals testified at trial.

**IV. Conclusion.**

For the foregoing reasons, we affirm the judgment of the district court and vacate the decision of the court of appeals.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Appel, J., who concurs specially.

#18–0765, *State v. Kuhse*

**APPEL, Justice (concurring specially).**

I concur in the result in this case. It is difficult to understand why the essential elements of the defense of justification were not included in the marshaling instruction in this case. In a criminal case, the marshaling instruction is probably the most important instruction the court provides the jury. It is at the very heart of the criminal case. The question is what we should do about this failure. The parties present the issue under the two-pronged test for ineffective assistance of counsel established in *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052 (1984).[3]

The duty prong of *Strickland* has been subjected to vigorous and sustained attack.[4] But even under the applicable *Strickland* caselaw, I

---

[3]Kuhse does not cite either the Sixth Amendment to the United States Constitution or article I, section 10 of the Iowa Constitution. When a party does not cite either the state or federal constitutional provision, we may consider both provisions. *King v. State*, 797 N.W.2d 565, 571 (Iowa 2011). Kuhse does not argue for a different analysis under the Iowa Constitution but simply adopts *Strickland*'s principles. Under the circumstances, for purposes of this case, we apply the *Strickland* test, reserving the right to apply the federal standard more stringently than the federal courts. *See, e.g., State v. Graham*, 897 N.W.2d 476, 481 (Iowa 2017) ("[W]e do not necessarily apply the federal standards in a fashion identical to the United States Supreme Court."); *State v. Lindsay*, 881 N.W.2d 411, 427 (Iowa 2016) (noting that while "we apply the federal framework for the purpose of this case" we also "reserve the right to apply that framework in a fashion different from federal caselaw"); *State v. Pals*, 805 N.W.2d 767, 771–72 (Iowa 2011) ("Even where a party has not advanced a different standard for interpreting a state constitutional provision, we may apply the standard more stringently than federal case law.").

[4]Justice Marshall noted that the test was "so malleable that, in practice, it . . . [has] no grip" and "yield[s] excessive variation." *Strickland*, 466 U.S. at 707, 104 S. Ct. at 2075 (Marshall, J., dissenting). This confusion has been noted in scholarly sources as well. *See* John H. Blume & Stacey D. Neumann, *"It's Like Deja vu All Over Again":* Williams v. Taylor, Wiggins v. Smith, Rompilla v. Beard *and a (Partial) Return to the Guidelines Approach to the Effective Assistance of Counsel*, 34 Am. J. Crim. L. 127, 142 (2007) (observing that "[a]lmost all representation was found to be within *Strickland*'s 'wide range of professionally competent assistance' " (quoting *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066 (majority opinion))); Martin C. Calhoun, *How to Thread the Needle: Toward a Checklist-Based Standard for Evaluating Ineffective Assistance of Counsel Claims*, 77 Geo. L.J. 413, 455 (1988) (critiquing the *Strickland* test, finding it "virtually insurmountable," and noting the need for a "predictable and objective categorical approach") [hereinafter Calhoun, *Threading the Needle*]; Meredith J. Duncan, *The (So-Called) Liability of Criminal Defense Attorneys: A System in Need of Reform*, 2002 BYU L.

have little trouble concluding a breach of duty occurred in this case. Jury instructions must be written to give jurors "a clear understanding of what they need to decide." *Lovick v. Wil-Rich*, 588 N.W.2d 688, 695 (Iowa 1999).

Here the marshaling instruction did not tell the jury that the State was required to prove the lack of justification beyond a reasonable doubt. Instead, the marshaling instruction stated that the jury could convict Ken Kuhse by making four other factual findings. There was no cross-reference to other instructions from which the jury might have gleaned the notion that the State was required to prove lack of justification. There is no conceivable defense strategy for failing to include proper instructions regarding justification where it belonged, in the marshaling instruction.

Under *Strickland,* however, a breach of duty is not enough. The second prong of prejudice must also be satisfied. We have stated,

> [T]he prejudice prong of the *Strickland* test "does not mean a defendant must establish 'that counsel's deficient conduct more likely than not altered the outcome in the case.' A defendant need only show that the probability of a different result is 'sufficient to undermine confidence in the outcome.' "

*State v. Maxwell*, 743 N.W.2d 185, 196 (Iowa 2008) (quoting *Bowman v. State,* 710 N.W.2d 200, 206 (Iowa 2006)).

Before discussing the matter further, I want to emphasize how difficult it is to apply the second prong of the *Strickland* test. In many cases, a conscientious application of *Strickland* requires judges to engage in a careful review of the entire trial transcript. Busy appellate judges may

Rev. 1, 27–28 (2002) (finding *Strickland* to be an unworkable standard, as it essentially requires cooperation of the counsel against whom the claim is being made); Gary Feldon & Tara Beech, *Unpacking the First Prong of the* Strickland *Standard: How to Identify Controlling Precedent and Determine Prevailing Professional Norms in Ineffective Assistance of Counsel Cases*, 23 U. Fla. J.L. & Pub. Pol'y 1, 9–15 (2012) (analyzing generally the "post-*Strickland* confusion"); Elizabeth Gable & Tyler Green, Wiggins v. Smith: *The Ineffective Assistance of Counsel Standard Applied Twenty Years After* Strickland, 17 Geo. J. Legal Ethics 755, 764–65 (2004) (noting the particular difficulty of *Strickland* in a criminal context and only narrow utility for many defendants).

be tempted to shortchange the process by relying on briefs in making the call, rather than engaging in a painstaking review of the entire record, which a serious application of *Strickland* requires.

More importantly, however, the so-called *Strickland* "test" is impossible to apply in a principled fashion in many cases.[5] How does one determine whether a jury would have decided matters differently if certain professional mistakes were not made by defense counsel?[6] Except in the relatively rare cases where the error is minor or the evidence is truly overwhelming or virtually uncontested, conscientious judges acting in good faith come to different conclusions based on the same record with

---

[5]*See, e.g.*, Calhoun, *Threading the Needle*, 77 Geo. L.J. at 458 (analyzing trends in *Strickland*-related appellate decisions and noting the circuit courts found no ineffectiveness in 36.18% based solely on the no-prejudice ground, in 32.34% based solely on the performance ground, in 5.27% based on the no-prejudice ground though indication of bad performance, and in 21.94% on neither ground, and with ineffectiveness found in only 4.27% cases overall); Marcus Procter Henderson, Note, *Truly Ineffective Assistance: A Comparison of Ineffective Assistance of Counsel in the United States of America and the United Kingdom*, 13 Ind. Int'l & Comp. L. Rev. 317, 331 (2002) (stating that while it was hoped that *Strickland* "would provide consistency in application," in reality it led to "inconsistent application, leading to a new level of arbitrariness"); Amy R. Murphy, Note, *The Constitutional Failure of the Strickland Standard in Capital Cases Under the Eighth Amendment*, 63-SUM Law & Contemp. Probs. 179, 199 (2000) (observing that "there does not seem to be any pattern to what type of information will pass muster and what will not," finding "numerous examples of cases that failed the *Strickland* test, as well as examples of cases that survived it").

[6]Scholarly commentary has been similarly critical. *See, e.g.*, Keith Cunningham-Parmeter, *Dreaming of Effective Assistance: The Awakening of* Cronic's *Call to Presume Prejudice from Representational Absence*, 76 Temp. L. Rev. 827, 838–40 (2003) (criticizing *Strickland*'s prejudice prong as being unjustifiably deferential to attorney ability, and noting that *Strickland* "assum[es] that prejudice . . . will be detectable from the appellate record" which is "unwarranted"); Richard L. Gabriel, *The* Strickland *Standard for Claims of Ineffective Assistance of Counsel: Emasculating the Sixth Amendment in the Guise of Due Process*, 134 U. Pa. L. Rev. 1259, 1279–81 (1986) (exploring generally the impossibility of proving potential prejudice and noting that as "an outcome-determinative test" it "assumes one can determine what the result would have been had effective assistance of counsel been provided"); Paul Marcus, *The United States Supreme Court (Mostly) Gives Up Its Review Role with Ineffective Assistance of Counsel Cases*, 100 Minn. L. Rev. 1745, 1752 (2016) ("[H]ow does one prove the negative: how does one show what would have happened if there had been an engaged, thoughtful, and committed lawyer handling the trial? Proof of prejudice? Hardly likely to happen very often.").

some frequency. Here, three appellate judges on the court of appeals came to the conclusion that the second prong of *Strickland* has been met, but members of this court come to the opposite conclusion. All are working hard and diligently. But these judgment calls are very subjective in nature. Given the posture of this case, however, I have no choice but to apply the amorphous *Strickland* test as best I can.

I start with the marshaling instruction itself. The marshaling instruction is the crown jewel of the court's instructions in a criminal case. It sets out, hopefully in plain language, what the State must show in order to convict the defendant of the crime charged. Further, in this case, it is undisputed that the jury studied the marshaling instruction with care. During jury deliberations, the jury sent a question about the marshaling instruction to the court, identifying what the court concluded was a technical problem in the instruction regarding the use of the term "or." This evidence that the jurors carefully studied the flawed marshaling instruction, showing sufficient concern about language issues so as to ask the judge for clarification, bolsters my concern.

The problem with the marshaling instruction is arguably mitigated by other instructions. Instruction No. 12 states that a defendant may use reasonable force to prevent injury to a person, known as justification. Instruction No. 12 further states that the State must prove the defendant was not acting with justification. Additionally, Instruction No. 3 provided that whenever the State is required to prove something, it must be proved beyond a reasonable doubt. Thus, by reading Instruction Nos. 3 and 12, the jury would have concluded that the defendant could claim justification as a defense and that the State had the burden to show beyond a reasonable doubt that the facts do not support the defense. But in stark contrast, Instruction No. 9, the marshaling instruction, lists the elements

of assault causing bodily injury, makes no mention of justification, and declares that if all the elements are proven, the defendant is guilty.

So, we have two conflicting approaches in the instructions. I do not think the presence of Instruction Nos. 3 and 12 solve the conflict; indeed, they create the conflict. In closing argument, neither the State nor the defense addressed the inconsistency, and the mere fact that justification was generally discussed does nothing to resolve the potential of Instruction No. 9 to mislead or confuse the jury.

That leaves us with analysis of the evidence in the case. It was a very short trial, with a scant record. The State called four witnesses: the victim, two police officers, and a medical assistant who attended to the victim's injuries on the night of the incident. The defendant called no witnesses. The victim testified that she was attacked by Kuhse and that she told this at the time to a friend, police officers, and medical personnel. The defense of justification came in through the testimony of one of the police officers, who told the jury that when they interviewed Kuhse on the night of the incident, Kuhse claimed to have been attacked by his wife. The defense did little to establish the justification defense other than relying upon the statements made by Kuhse to the officer.

The majority makes two strong points. First, the statements made to the police officer by Kuhse are odd. Kuhse told the officer the injuries he sustained were "from her bumping into him, [and] throwing herself onto his arm." That seems borderline ridiculous. Kuhse told the officer that he "held her back with one arm" and then "had to push her away from him," causing her to hit the wall. Quite odd.

Second, the injuries sustained by the victim far exceeded those of Kuhse, who was physically much larger than his alleged attacker. And,

the evidence strongly supports the conclusion that the victim was choked, an act which does not seem consistent with a justification defense.

In addition to these points, a witness who Kuhse claimed to the officer would support his case could not be reached by police after repeated phone calls. This witness did not appear at trial.

Given the thinness of the record, the improbability of Kuhse's account, and the nature of the injuries, I conclude, by applying the amorphous *Strickland* standard as best as I can, that this is one of those cases where the evidence is so thin that there is no substantial probability that a different verdict would have occurred if a proper instruction had been given. I therefore concur in the result in this case.